UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHY B.,[1]

        Plaintiff,      DECISION AND ORDER

-vs-

               1:20-CV-0658 CJS

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion (ECF No.15) for judgment on the pleadings and Defendant's cross-motion (ECF No. 16) for the same relief. For the reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded to the Commissioner for further administrative proceedings.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

STANDARDS OF LAW

The Commissioner decides applications for SSDI and SSI benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An [administrative law judge] [("]ALJ['] is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

This action has a complicated procedural history, with which the reader is presumed to be familiar.  The Court will only refer to the procedural history and administrative record as necessary to address the legal arguments raised by Plaintiff.

This action involves two different claims for benefits that are now consolidated. Plaintiff initially claimed to have become disabled due to a combination of impairments including degenerative disc disease of the cervical spine and lumbar spine, carpal tunnel

4

syndrome, headaches, diabetes with related neuropathic pain, calluses on her feet and obesity.    Plaintiff claimed that as a result of these ailments, she could stand for less than five minutes at a time, sit for only five to ten minutes, and walk for only ten-to-fifteen minutes before needing to sit down or lie down. Tr. 65.   Plaintiff claimed that she could not lift anything or do "anything" around the house, such as chores. Tr. 61 ("I can't really – I can't pick up the broom and sweep.   I can't vacuum I can't really do anything, so I don't do any chores.").   Plaintiff claimed that other family members (parents, sister, niece) cooked for her, washed her laundry and sometimes help ed her to get dressed. Tr. 75, 77.   Plaintiff contended that she spends most of each day lying in bed. Tr. 62. Plaintiff alleged a disability onset date of December 1, 2010,

However, an emergency department note from February 24, 2013, indicated that Plaintiff had injured her left hand while moving furniture. Tr. 690 ("Patient states: Injury to left hand sustained today while moving furniture and I banged my hand on a door jamb."). Moreover, the emergency room doctor reported that apart from swelling of her left hand, Plaintiff had no musculoskeletal or neurological deficits, and had intact range of movement in all extremities. Tr. 691-694.   The doctor noted, however, that Plaintiff had a past medical history of "herniated disc; back pain." Tr. 693.

Plaintiff claimed to have previously worked full-time as a dental assistant and as a cashier at a gas station. Tr. 44, 47.   Plaintiff indicated that her last full-time job, at the gas station, had ended in 2005. Tr. 67.   Plaintiff indicated that she was terminated from that job but could not remember why.

Plaintiff claimed that she subsequently worked part-time for "three or four years" as a babysitter for her sister's four children. Tr. 44, 45.   The two youngest children, twins, were approximately eight or nine years of age when Plaintiff began caring for them. Tr. 45.   Notably, Plaintiff indicated that she cared for the children entirely at her sister's home. Tr. 46.   In that regard, Plaintiff indicated that because of her alleged impairments, she was essentially house-bound except for brief trips out of the house to drop the children off at school or to pick them up, or to take them to doctor appointments. Tr. 46.

Plaintiff denied having any other type of employment. Tr. 46.   Plaintiff contended she first began having back pain and leg pain in 2008 or 2009, Tr. 50, and that she became completely unable to work in December 2010. Tr. 67.

However, there are multiple references in the record to Plaintiff having had another job, at which she worked even after 2010.   More specifically, there are multiple references by different doctors to Plaintiff working in, and, indeed, owning, a pizzeria. On March 18, 2008, Plaintiff went to her primary care doctor complaining of arm pain, and reportedly stated that she "works pulling dough in a pizzeria she owns." Tr. 367.   More than two years later, on September 28, 2010, Plaintiff went to her primary care doctor complaining of fatigue and back pain radiating into her legs, and the doctor again reported that Plaintiff "works in a pizzeria." Tr. 341.   Then, on January 10, 2013, Plaintiff went to a podiatrist complaining of swollen feet, and the podiatrist reported that, "The patient works at 2 different pizzerias so she is on her feet a lot of the day.   The patient used to be a dental assistant 7–8 years ago." Tr. 478.

On June 28, 2013, Donna Miller, D.O.[3] ("Miller") performed a consultative internal medicine examination of Plaintiff at the Commissioner's request. Tr. 391–394.   Plaintiff's chief complaint was low back pain.   Miller performed an examination of Plaintiff's cervical and lumbar spines, and twice noted that it appeared Plaintiff "was not putting full effort" into the testing. Tr. 393.   Except for some limitations of range of motion, Miller's findings were essentially normal. Tr. 393.   Although, Miller noted that an x-ray showed lumbar degenerative joint disease. Tr. 393.   Miller's diagnoses were "chronic low back pain" and "degenerative disc disease." Tr. 393.   Miller's medical source statement, in its entirety, was that, "The claimant has mild limitation for heavy lifting, bending and carrying." Tr. 393.

On December 16, 2013, occupational therapist Joseph Higgins, OTL/CWA ("Higgins") performed a functional evaluation of Plaintiff, at the request of Plaintiff's treating doctor, Mary Rykert-Wolf, M.D. ("Rykert-Wolf"). Tr. 432.   Higgins indicated that he performed "an assessment that focused on lower back and legs." Tr. 432.   Higgins reported that that Plaintiff had significant restrictions of movement in the cervical spine and lumbar spine due to pain, as well as the following limitations:

> Weakness in grip as at 25 lbs. left hand vs. 60 lbs. dominant right hand. Her right hand is functional for activity and dexterity on short term basis. She has marked limitations.   She can lift 15 lb. from table to chest rare to occasional.   She can carry 10 lb. rarely.   She can walk only rarely and stand only rarely or under 10%.   She is a large woman at 6'1" and 280 lbs. This is 37 BMI or obese.   Her current finding would place this under sedentary work level and restricted below full competitive employment base on inability to maintain full 7–8 work hours.   Work occasionally at 2–3 hours

---

[3] Doctor of Osteopathic Medicine.

a day in limited one hand sedentary work would be viable.

Tr. 432.

On November 11, 2014, Dr. Rykert-Wolf also issued functional assessment. Tr. 527–532.   However, Rykert-Wolf merely copied over the notations on Higgins's report, verbatim, and stated that her opinion was "based on formal [functional capacity examination] performed by PT [sic]/Joe Higgins on 12-16-13." Tr. 532.   Rykert-Wolf also added a brief narrative note, stating:

> To Whom it May Concern:   Based on Formal Functional Capacity Exam performed by Physical Therapist [sic], Mr. Joe Higgins, on 12/16/13, patient would be unable to achieve meaning full employment due to physical limitations due to cervical and lumbar spinal disc disease with radiation of pain and numbness to arms/legs, with patient unable to sustain even limited activity on a constant basis past 2 to 3 hours per day.

Tr. 686.   (With regard to this narrative report, the Court observes that Rykert-Wolf twice incorrectly identifies Higgins is a physical therapist, when he is actually an occupational therapist, according to his own report).

On November 16, 2016, David Brauer, M.D. ("Brauer") performed another consultative internal medicine examination of Plaintiff at the Commissioner's request. Tr. 1467–1471.   Plaintiff now complained of low back pain radiating into both legs, chronic neck pain, hypertension, diabetes, asthma and high cholesterol.   Plaintiff claimed that she was completely unable to do anything for herself, and needed assistance even with bathing and dressing. Tr. 1469.   Upon examination, Brauer reported that Plaintiff appeared to be in no acute distress, with a slow limping gait, and that she used a cane to walk.   Brauer reported the following findings: Full range of movement in the cervical

spine and lumbar spine; reduced range of motion in the lumbar spine; full range of movement in the arms and hands bilaterally; normal neurologic findings and full strength in the upper and lower extremities; intact finger dexterity; and full hand grip strength bilaterally. Tr. 1470.   Brauer noted than an x-ray of Plaintiff's lumbosacral spine showed degenerative changes. Tr. 1470.   Brauer's diagnoses were chronic low back pain, chronic neck pain, hypertension, diabetes, hyperlipidemia and asthma, all with a "stable" prognosis. Tr. 1471.   Brauer's medical source statement was as follows:

> On the basis of the examination, there is no limitation in the claimant's ability to sit.   There is moderate to marked limitation in the claimant's ability to stand, walk, climb, push, pull, or carry heavy objects.   The claimant should avoid dust, smoke, allergens, or other respiratory irritants.   There is also a marked limitation in the claimant's ability to perform any activities that require bending, squatting or kneeling.

Tr. 1471.

After the Commissioner denied Plaintiff's claim initially, an administrative hearing was held on March 9, 2015, at which Plaintiff appeared with her attorney and testified. The ALJ questioned Plaintiff about her alleged functional limitations and work history. With regard to work history, the ALJ asked Plaintiff about the notations in the medical record indicating that Plaintiff had owned and/or worked in a pizzeria after the alleged disability onset date.   However, Plaintiff flatly denied ever working in a pizzeria or owning a business, and offered no explanation for how multiple references to her working in a pizzeria had found their way into her medical record. Tr. 7778.   The ALJ also questioned Plaintiff about the emergency room note indicating that Plaintiff had injured her hand while moving furniture after the alleged disability onset date.   However, Plaintiff denied moving

furniture, and stated that she had actually injured her hand falling down a flight of stairs. Again, Plaintiff offered no theory for why the emergency room doctor would have quoted her as saying that she had been moving furniture.   The Administrative Law Judge ("ALJ") also took testimony from a vocational expert ("VE").

On May 12, 2015, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of the decision. Tr. 14–27.   In pertinent part, the ALJ found that Plaintiff had severe impairments consisting of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, lumbar radiculopathy, carpal tunnel syndrome, foot impairment, diabetes/hyperinsulemia, migraine headaches and obesity, and that these impairments, either singly or in combination, did not meet or medically equal a listed impairment. Additionally, the ALJ found that Plaintiff had the RFC to perform sedentary work, though she would need to be able to sit or stand at will while working. Tr. 18.   Further, the ALJ found that Plaintiff would have postural and environmental limitations, as well as a restriction from repetitive gripping or grasping with her hands. Tr. 18.   The ALJ also found that, with this RFC, Plaintiff could not perform her past work, but could perform other jobs that were identified by the VE, and that she was therefore not disabled. Tr. 25.

As part of his ruling, the ALJ indicated that he did not find Plaintiff's statements about her symptoms to be entirely credible, "due to the discrepancy between the treatment record and the claimant's testimony." Tr. 24.   In explaining this finding, the ALJ referred, in part, to the treatment notes that referred to Plaintiff moving furniture and working in a pizzeria when she was supposedly disabled, and to Dr. Miller's observation

that Plaintiff had not put forth full effort during her examination. Tr. 24.

Plaintiff appealed the ALJ's ruling to the Appeals Council.   While the appeal was pending, on October 11, 2016, Plaintiff filed a second application for SSI benefits.   While that new application was pending, the Appeals Council declined to review the ALJ's decision denying Plaintiff's initial application, and Plaintiff filed an action for review in this Court.

On August 31, 2018, the Honorable Lawrence J. Vilardo, United States District Judge, reversed and remanded the matter to the Commissioner for further administrative proceedings. [*Kathy B.*] *v. Commissioner*, No. 16-CV-729, 2018 WL 4181769 (W.D.N.Y. Aug. 31, 2018).   Judge Vilardo found that the ALJ erred by failing to develop the record, since his RFC finding relied almost exclusively on Dr. Miller's opinion, which did not directly support several aspects of the RFC finding. *Id*. at *4.   Judge Vilardo further found that the ALJ erred in giving only little weight to the opinions of Higgins and Ryker-Wolf without first recontacting them to seek clarification concerning the bases for their opinions and their functional evaluation findings. *Id*. at *5.

On November 1, 2018, a different ALJ denied Plaintiff's second application for benefits, which had been filed while her first action was before the Appeals Council. Tr. 922-934.   Plaintiff again appealed, and on February 21, 2019, the Appeals Council consolidated the two claims (the second-filed claim and the claim that had been remanded by Judge Vilardo) and remanded the consolidated claim to the same ALJ who had denied the first claim. Tr. 911–915.   The Appeals Council's remand order discussed Judge Vilardo's decision and directed the ALJ to do the following: 1) reconsider Plaintiff's

11

RFC and provide an explanation with specific references to supporting evidence; 2) evaluate the medical opinion evidence in accordance with the applicable regulations; 3) recontact medical sources to provide additional evidence and clarification of their opinions; and 4) if necessary, obtain supplemental evidence from a VE. Tr. 914.

On June 11, 2019, John Schwab, D.O. ("Schwab") performed a third consultative internal medicine examination of Plaintiff at the Commissioner's request. Tr. 1209–1211. Schwab noted that Plaintiff, who was then 47 years of age, indicated that she had injured her lower back "a long time ago," and that the injury had "slowly progressed to a constant pain with a maximum intensity of 10/10," involving a sharp pain that radiated down both legs. Tr. 1209.   Regarding Plaintiff's self-reported activities of daily living, Schwab wrote: "She eats sandwiches.   Showers sometimes.   Dresses sometimes.   She enjoys watching TV." Tr. 1209.   Upon physical examination, Schwab reported that Plaintiff appeared to be in no acute distress; used a cane, which appeared necessary, but walked with a normal gait with and without a cane; was able to rise from a chair without difficulty and get on and off the examining table without assistance; had full and normal movement in the cervical spine and thoracic spine; had reduced range of movement in the lumbar spine; had full range of motion in arms and legs; had normal strength and neurologic responses in arms and legs; and had intact hand and finger dexterity, and full grip strength bilaterally. Tr. 1210–1211.   Schwab's medical source statement, in its entirety, was as follows: "She has a marked restriction in bending, lifting and carrying heavy objects. Marked restriction in raising both arms over shoulder height, lifting weights." Tr. 1211. Schwab's narrative report did not indicate that Plaintiff had any limitation with regard to

sitting, standing or walking.

However, on that same date, Dr. Schwab also completed a check-the-box-type RFC assessment, that was much more specific and restrictive than his narrative report. Tr. 1213–1218.   In pertinent part, Schwab stated that during an 8-hour workday, Plaintiff could only sit for three hours total, stand for one hour total, and walk for one hour total, and that she would need to "lie down" for the rest of the 8-hour workday. Tr. 1214. Schwab did not provide an explanation for the differences between the two statements.

On January 21, 2020, the ALJ held a new hearing, at which Plaintiff appeared with her attorney and testified, and at which a VE also testified. Tr. 838–873.   Notably, the ALJ again asked Plaintiff about the notations in her medical records indicating that she was working at a pizzeria (which she owned) and moving furniture when she was claiming to be completely unable to work.   Curiously, when asked if she could explain how the notations about the pizzeria ended up in her medical records, Plaintiff now offered an elaborate explanation, stating that it was her *sister*, not herself, who owned a pizzeria, and that she had regularly taken her sister's children, whom she was babysitting, to the pizzeria, where the children would eat. Tr. 859–861.   Plaintiff further stated that staff from her doctors' offices would come to the pizzeria to pick up food, and that they probably saw her there at the pizzeria. Tr. 859.   Plaintiff implied that because medical staff saw her at the pizzeria, they mistakenly concluded that she worked at, or owned, the pizzeria.[4]

---

[4] Of course, Plaintiff's testimony would not explain why her primary care doctor and her podiatrist would have written notations in her medical chart indicating that she "pulled dough" at the pizzeria, resulting in arm pain, and spent long hours on her feet working at the pizzeria, resulting in foot pain.   Especially since, according to Plaintiff, when medical staff supposedly saw her at the pizzeria she would have been sitting down to relieve her back pain. Tr. 47, 48, 50.

Further, in connection with this same explanation, Plaintiff also now stated that she had only picked up the children from school in the afternoons (and sometimes took them directly to the pizzeria), whereas she had previously testified that she dropped the children off at school in the mornings and picked them up in the afternoons. Tr. 46, 48, 861.   Additionally, whereas Plaintiff had previously testified that she needed to lie down with her feet elevated except for when she was either transporting the children to-or from school and doctor appointments or making them a quick meal at home, she now testified that she regularly accompanied the children to the pizzeria after school. Tr. 47, 48, 50.

On February 5, 2020, the ALJ issued a decision again finding that Plaintiff was not disabled at any relevant time. Tr. 813–830.   In pertinent part, the ALJ found, again, that Plaintiff had the RFC to perform less than a full range of sedentary work. Tr. 820.   In that regard, with regard to sitting, standing and/or walking, the ALJ stated: "The claimant can have continuous sitting limited to one hour before necessary postural change to standing for up to 15 minutes before resuming seated activities." Tr. 820. The ALJ did not indicate, however, that Plaintiff was limited to any total number of hours of standing each day. The ALJ further found that, due to the passage of time, Plaintiff had no past relevant work during the relevant 15-year lookback period, but that she could perform other jobs identified by the VE, and was therefore not disabled. Tr. 828–829.

In making this RFC finding, the ALJ again indicated that he did not find Plaintiff entirely credible. [5] Tr. 821 ("[T]here are inconsistencies in the record that diminish the

---

[5] This credibility finding is amply supported in the record.   Moreover, while the Court is limited to considering the administrative record in terms of its ruling, it nevertheless notes that a quick internet search produces an article in the Buffalo News on May 21, 2010, identifying a person by the same name as Plaintiff

persuasiveness of the claimant's statements regarding the allegations and resultant symptoms.   The record shows she was able to pull pizza dough out of the ovens for the pizzeria her sister owns as well as another pizzeria.   Additionally, records show she was able to babysit her sister's . . . children including child care and transportation to their activities.   Moreover, records show she was able to move furniture in February 2013.") (citations to record omitted).

Also as part of his RFC discussion, the ALJ indicated that he gave "great weight" to the medical opinion of Dr. Schwab, and "significant weight" to the opinion of Dr. Brauer. Tr. 826, 827.   In this regard, the ALJ twice purported to summarize the content of the reports from Dr. Brauer and Dr. Schwab. Tr. 822, 823.   In the first such summary, the ALJ stated:

> [During the] subsequent consultative examinations with Dr. Brauer and Dr. Schwab, the claimant exhibited limited mobility in the cervical and lumbar spine with negative straight leg raises and intact sensation, strength, pulses, and muscle tone.   They [(Brauer and Schwab)] concluded the claimant would have moderate to marked limitations in standing, walking, climbing, pushing, pulling or carrying heavy objects and marked limitations in bending, squatting or kneeling and marked limitations in bending, lifting, carrying heavy objects and raising arms over should height bilaterally.

Tr. 822 (citations to record omitted).   The second such summary was similar. *See*, Tr. 823 ("They [(Brauer and Schwab)] concluded the claimant would have moderate to marked limitations in pushing, pulling and carrying heavy objects as well as bending,

---

as the owner of a pizzeria on Main Street in North Collins, New York, the same town in which Plaintiff used to live. *See*, Tr. 484 (Podiatrist's form dated March 3, 2014, listing Plaintiff's home address in North Collins), 516 (2014 lab result listing Plaintiff's home address in North Collins).   In the interest of preserving Plaintiff's privacy in this action, *see*, Footnote 1, the Court does not include a hyperlink to the newspaper article.

squatting or kneeling and marked limitations in raising arms over shoulder height."). However, neither summary referred to any limitation on Plaintiff's ability to sit.   This, despite the fact that Schwab had indicated in his check-the-box RFC report that Plaintiff could sit for only three hours total in an 8-hour workday. Tr. 1214.   Indeed, nowhere in the ALJ's decision is it mentioned that Schwab limited Plaintiff to a total of three hours of sitting (along with one hour each of standing or walking) in an 8-hour workday.

The ALJ went on to state that he gave great weight to Schwab's consultative assessment since it corresponded to Schwab's examination findings and was also consistent with Dr. Brauer's findings. Tr. 826.   On this point, the ALJ cited to pages three and four of Schwab's narrative report (Exhibit 22F, pp. 3–4), but did not cite to Schwab's separate check-the-box functional report, which limited Plaintiff to only three hours of sitting per 8-hour workday. Tr. 826.

The ALJ further indicated that Schwab's opinion was consistent with the opinion of Jaffar Siddiqui, M.D. ("Siddiqui"), a physical medicine and rehabilitation specialist who, in 2015, examined Plaintiff upon a referral from Dr. Rykert-Wolf. Tr. 759, 827.   In this regard, Siddiqui's office notes contain the statement, "FUNCTIONAL LIMITATIONS: The patient's functional status is limited as follows:   ability to work and participate in aerobic activity." Tr. 759.   The ALJ interpreted this statement as an opinion by Siddiqui that Plaintiff was able to work and participate in aerobic activity. Tr. 827.

On the other hand, the ALJ again gave "little weight" to the opinion of plaintiff's treating physician, Dr. Rykert-Wolf. Tr. 825-826.[6]   In that regard, the ALJ stated, in

---

[6] As mentioned earlier, Judge Vilardo directed the ALJ to re-contact Rykert-Wolf and Higgins to seek

pertinent part, that Rykert-Wolf's opinion was "not consistent with the evidence as a whole." Tr. 826

Plaintiff appealed the ALJ's unfavorable ruling, but the Appeals Council declined to review the ALJ's decision.   Plaintiff then commenced this action.

In this action, Plaintiff contends that the Commissioner's decision denying benefits must be reversed for the following reasons: 1) the ALJ's RFC finding that Plaintiff is capable of the sitting required by sedentary work is erroneous and unsupported by substantial evidence, since the ALJ purported to give great weight to Dr. Schwab's opinion but failed to mention Schwab's finding that Plaintiff could only sit for three hours, stand for one hour and walk for one hour in an 8-hour workday;[7]  and 2) the ALJ failed to properly apply the treating physician rule to Dr. Rykert-Wolf's opinion.[8]   According to Plaintiff, these two arguments are intertwined, since the ALJ rejected Rykert-Wolf's opinion in part because it purportedly was inconsistent with Schwab's opinion, when it actually was similar to Schwab's check-the-box functional evaluation which the ALJ did not acknowledge.   Plaintiff also maintains that the ALJ erred in stating that Schwab's opinion was consistent with Brauer's opinion, since Brauer did not find that Plaintiff had sitting limitations.

---

clarification concerning their opinions.   The ALJ indicated that he made "multiple, detailed efforts" to obtain clarification from Rykert-Wolf and Higgins, but that "[n]o clarification ha[d] been provided." Tr. 826.   Plaintiff does not dispute that assertion or otherwise suggest that the ALJ failed to comply with that aspect of the remand order.

[7]  In this regard, Plaintiff contends that the ALJ impermissibly "cherry picked" favorable information from Schwab's report while ignoring unfavorable information.

[8]  Plaintiff asserts, for example, that "[t]he ALJ did not expressly consider the Plaintiff's treating years long relationship with Dr. Rykert-Wolf or the frequency of their appointments." Pl. Mem. of Law, ECF No. 15-1 at p. 24.   Plaintiff also argues that the ALJ misconstrued and/or misattributed to Rykert-Wolf a statement in the record supposedly indicating that Plaintiff was "clinically doing well." Id.

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.   Defendant argues, for example, that the ALJ was entitled to give great weight to Schwab's opinion generally without adopting every single limitation identified therein into the RFC finding.   Defendant further argues that the RFC finding is supported by substantial evidence in the record as a whole.   According to Defendant, "[a]lthough the ALJ generally gave great weight to Dr. Schwab's opinion, he determined that the other medical opinions of record better captured Plaintiff's ability sit."[9]   Defendant further contends that Plaintiff's argument concerning the ALJ's treatment of Rykert-Wolf's opinion is "baseless," since the ALJ provided the requisite "good reasons" for the weight that he assigned to Rykert-Wolf's opinion.[10]

The Court has carefully reviewed and considered the parties' submissions.

DISCUSSION

The ALJ's Alleged Error With Regard to Dr. Schwab's Opinion

Plaintiff contends that it was error for the ALJ not to adopt, or at least discuss, the significant limitations contained Schwab's RFC report, after purporting to give "great weight" to Schwab's opinion.   Defendant, though, argues that an ALJ is not required to discuss every piece of evidence in the record, and that the RFC finding is supported by substantial evidence.   Defendant is correct that the record contains substantial evidence to support the RFC finding, provided that the ALJ did not otherwise err in his evaluation

---

[9]  Def. Mem. of Law, ECF No. 16-1 at p. 11.
[10]  Def. Mem. of Law, ECF No. 16-1 at p. 14.

of the evidence.   However, the Court agrees with Plaintiff that the ALJ did commit reversible error by failing to address the restrictive limitations contained in Schwab's check-the-box RFC report.

Of course, when making an RFC finding an ALJ is not required to discuss every piece of evidence or to adopt every limitation contained in a medical opinion, even where he generally gives the opinion great weight.

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added).   Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021).

Here, however, the Court cannot say with any confidence that the ALJ did, in fact, weigh all the evidence available to make an RFC finding that is consistent with the record as a whole.   There are several reasons for the Court's uncertainty on this point.   First, while the ALJ indicated that he gave great weight to Schwab's opinion, he only cited to Schwab's narrative report, and never mentioned Schwab's accompanying check-the-box report.   One would expect that the ALJ would have mentioned the second report, since there are significant outcome-determinative differences between the two reports that cry out for an explanation.   Indeed, Schwab's narrative report (Tr. 1209–1211) does not

19

suggest that Plaintiff has *any* limitations with regard to sitting, standing or walking, while his accompanying report (Tr. 1213–1218) indicates that Plaintiff can only sit, stand and walk for a total of five hours in any 8-hour workday, which, if true, would prevent Plaintiff from performing even sedentary work.

Nor can the Court simply assume that the ALJ considered and disregarded the more-restrictive aspects of Schwab's report because he found other evidence of record more persuasive.   In that regard, the ALJ twice purported to summarize the contents of Schwab's opinion, but in doing so he never mentioned anything about sitting, which suggests to the Court that the ALJ may have simply overlooked the second report by Schwab.   Moreover, the ALJ asserted that Schwab's opinion was consistent with Brauer's opinion, which would only be true if the ALJ was referring just to Schwab's narrative report, since Schwab's second report was clearly not consistent with Brauer's report.   Similarly, the ALJ asserted that Schwab's opinion was more consistent with the record than was Rykert-Wolf's opinion, when in fact Rykert-Wolf's opinion was relatively consistent with Schwab's second report, though not with his first report.   These factors cause the Court to conclude that remand is necessary for the Commissioner to clarify whether the ALJ actually considered and rejected Schwab's second report (Tr. 1213–1218) and, if so, why.   In that regard, it also seems necessary to have the Commissioner re-contact Schwab to obtain an explanation for the seemingly stark differences between his two reports.

On a related point, the ALJ also erred insofar as he interpreted a statement in Dr. Siddiqui's office notes as supporting the RFC finding.   Specifically, as mentioned earlier,

Siddiqui's notes contain the statement, "FUNCTIONAL LIMITATIONS: The patient's functional status is limited as follows:   ability to work and participate in aerobic activity." Tr. 759.   The ALJ interpreted this statement as an opinion by Siddiqui that Plaintiff was *able* to work and participate in aerobic activity.[11] However, the statement says just the opposite, since it indicates that Plaintiff is "limited" with regard to work and aerobic activity. Consequently, it was error for the ALJ to rely on that statement by Siddiqui to support the RFC finding.

<u>The ALJ's Alleged Failure to Apply the Treating Physician Rule</u>

Plaintiff also contends that the ALJ failed to follow the "treating physician rule" when evaluating Dr. Rykert-Wolf's opinion. The Court agrees.

A treating physician's opinion is entitled to "controlling weight" "only so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 (2d Cir. 2021) (citations and internal quotation marks omitted).

> When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted). Those factors are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (citation omitted).   A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a

---

[11] Tr. 827 ("I also considered the opinion of Jafar Siddiqui, M.D., who opined the claimant has the capacity to work and participate in aerobic activity and give it some weight.").

searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Id*. at 96.

*Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019); *see also*, 20 CFR 404.1527(c) (listing the factors to be considered as to all medical opinion evidence, except where controlling weight is given to a treating physician's opinion).   Put differently, an ALJ's failure to explicitly consider the *Burgess* factors when assigning less-than-controlling weight to a treating physician's opinion is a "procedural error" that will require remand, unless the ALJ provides sufficiently good reasons for his weight assignment that the court can conclude the substance of the treating physician rule was respected. *See, Estrella v. Berryhill*, 925 F.3d at 96 ("An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error.   If the Commissioner has not otherwise provided 'good reasons' for its weight assignment, we are unable to conclude that the error was harmless and consequently remand for the ALJ to comprehensively set forth [his or her] reasons. If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm.") (citation and internal quotation marks omitted).

Plaintiff here asserts that the ALJ failed to apply the *Burgess* factors, since he "did not expressly consider the Plaintiff's treating years-long relationship with Dr. Rykert-Wolf or the frequency of their appointments."[12]   Plaintiff also argues that the ALJ misconstrued and/or misattributed to Rykert-Wolf a statement in the record supposedly indicating that Plaintiff was "clinically doing well," and then used that statement as evidence that Rykert-

---

[12]  Pl. Mem. of Law, ECF No. 15-1 at p. 24.

Wolf's opinion was inconsistent with her own treatment notes.

As an initial matter, Plaintiff is correct that the ALJ erred in attributing the statement that Plaintiff was "clinically doing well" to Rykert-Wolf.[13]   The statement was actually made by urologist Phillip Seereite ("Seereite"), about a urological condition unrelated to Plaintiff's disability claim. (Exhibit 16F, p. 1).   Consequently, the ALJ should not have relied on that statement to find that Rykert-Wolf's opinion was inconsistent with the treatment records overall. Tr. 826.

The Court also agrees that the ALJ did not expressly discuss all the *Burgess* factors as required by the treating physician rule.[14] Moreover, the Court is not inclined to say that this procedural error was rendered harmless by the ALJ otherwise providing sufficiently good reasons for the weight that he assigned to Rykert-Wolf's opinion.   As just noted, the ALJ diminished the weight that he gave to Rykert-Wolf's opinion after mistakenly attributing a statement to Rykert-Wolf that was actually made by Dr. Seereeite. Additionally, for the reasons discussed earlier concerning the ALJ's treatment of Dr. Schwab's opinion, it is unclear whether the ALJ's finding, that Rykert-Wolf's opinion was inconsistent with the record as a whole, is supported by substantial evidence. Tr. 826. Consequently, on remand the Commissioner should re-evaluate Rykert-Wolf's opinion consistent with the treating physician rule.

CONCLUSION

---

[13] *See*, ALJ Decision, Tr. 826 ("Treatment records from Dr. Rykert-Wolf also indicate that the claimant is "clinically doing well (16F/1).")
[14] For example, the ALJ did not expressly mention the frequency of Plaintiff's appointments with Rykert-Wolf, though he did vaguely acknowledge the long-term nature of the treating relationship. Tr. 825 ("Dr. Rykert-Wolf . . . has a longitudinal treatment history with the claimant as her primary care physician.").

For the reasons discussed above, Plaintiff's motion (ECF No.15) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 16) for the same relief is denied, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
       September 27, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge